cases to be submitted today on oral argument and we begin with United States v. Rafiq. Mr. Cofer. Good morning. Please report. I'm Cody Cofer from the Federal Public Defender's Office for Appellant Mr. Shabbar Rafiq. The court should vacate the judgment of forfeiture because Mr. Rafiq was denied counsel at the forfeiture proceedings, an element of sentencing, and a critical stage of the criminal proceedings. Counsel was there. Not as it related to forfeiture, Your Honor. Well, how can you, I mean, it seems to me there's a certain inconsistency here. You can't on the one hand say that it's a critical stage of the proceedings, you know, criminal sentencing, and then have the lawyer say, well, I'm just the civil lawyer. You can't have it both ways. Well, I agree that you can't have Mr. Finn, or Mr. Finn ought not have declined to represent Mr. Rafiq for the criminal forfeiture, but that's what happened in this circumstance. Well, that's not the way I read the record. He represented right through the, the timeline is where it's critical here. And Mr. Finn, who incidentally is more than a, in his practice is an accomplished criminal defense lawyer as well as civil side. So when he says I'm not a civil lawyer, correct that, it means, he didn't say I'm not a civil lawyer, I'm not representing the civil, the civil proceeding. I think that's the consensus of it, I guess is what he meant. But putting that to one side, as I read this record, throughout each of the steps that were critical, Finn was there. Among other things, and he responded to the court about these conditions. Well, Your Honor, the, if you're talking about moments in the record and Mr. Finn's physical presence, I agree that he was there. Viewing a critical stage as being the sentencing and the process by which we determine the appropriate punishment, Mr. Finn was not there for the portion that was forfeiture, was the forfeiture. And I would agree with you that the statement that I'm not his civil lawyer taken in and of itself might not be so alarming. However, the timing of the statement was quite alarming and in that context clearly indicates that he was not representing Mr. Finn. You're trying to infer that from that statement that he meant that I've never been representing him in this, even though he was physically present? Well, Your Honor, at that point, I think it's helpful to look at Rule 32.2 procedure and see how that unfolds in this case to understand. At the stage at which they had the conference on the motion for preliminary order, the forfeiture proceedings actually had not commenced. The forfeiture proceedings commenced upon the filing of the superseding information, which was not filed until the Rule 11 colloquy in December. This conversation was had actually at, I'm sorry, as it relates to the statement in the factual resume, the forfeiture proceedings had not commenced. It's the preliminary or the motion for preliminary order is the first time that Mr. Rafik has any notice, if he receives the motion, the first time he has any notice of the property that the government's going to forfeit. Although the superseding indictment has a – One of the other things, Mr. Finn said that first reply that, well, it's not his property or something to that effect. Well, in – They were identifying what the property was. The – well, in the – I don't know how he would have responded if he didn't know what the property was. Well, he was responding to specific allegations in the pre-sentence report. Yeah. The notice of forfeiture contained in the superseding information, although it has a gratuitous list, is not limited by that. It, quote, says, all property, real and personal. And it's not until that motion for preliminary forfeiture that a defendant has notice of what the government is actually going to seek to forfeit. And it's at that critical stage that you have the opportunity to, one, under 32.2, contest the forfeiture. It's the first opportunity. And, two, it's the first opportunity and the only opportunity to have a hearing on the nexus. And coincidentally, that is the moment that Mr. Finn abandons his client or makes it clear that he's abandoned his client as it relates to criminal forfeiture. But then at the time he entered the plea in connection with the factual resume, didn't he agree that the assets identified in the forfeiture notice should be forfeited to the government? He – that's what the statement says. Now, the meaning of the statement, if you don't have counsel on the forfeiture matter, Mr. Rafik's admission, as it is termed, is really meaningless because it's just a legal conclusion. And so – but also at that stage, when he signs the factual resume in December. His admission is meaningless. I think coming from a lay person without the advice of counsel, giving the conclusion that the property identified in the superseding information or proceeds I think is meaningless. Furthermore – Well, let's talk about the timeline then. Yes. When the lawyer sent – when the lawyer said I'm not his civil lawyer, wasn't it after that that he objected to the forfeiture? Mr. Rafik objected or Mr. Finn objected? Mr. Finn objected. Well, he didn't object to the forfeiture. He objected – he tried to correct the pre-sentence investigation report in his objections, but he later withdraws that. Who withdrew that? Mr. Finn withdrew those objections. Did that occur after he had said I'm not his civil lawyer? Yes, Your Honor, it did. So he said I'm not his civil lawyer, but then he withdraws an objection on his client's behalf? To the pre-sentence report, yes, Your Honor. Well, but the part he was objecting to was the forfeiture. Isn't that right? He was objecting to the facts related to – The forfeiture. That concerned some of the property in the forfeiture, yes, Your Honor. And you don't think that's an indication that he was representing him? He withdraws an objection. No, Your Honor. I think it's an indication that in his long laundry list of objections, Mr. Finn was – reviewed the PSR with his client. When his client pointed out a factual inaccuracy such as his immigration status, Mr. Finn included that in his objection. There's no analysis as it relates to forfeiture in the objection. But all of that aside, Mr. Finn withdraws those objections, and essentially – I mean, there's no contest on the forfeiture issue by Mr. Finn. It's not until Mr. Rafik files a pro se motions trying to contest the forfeiture. Well, you don't think a lawyer would withdraw an objection without talking to his client about it, do you? I think there are circumstances when a lawyer would do that. I think – and we don't know whether that occurred in this case. We don't have any indication whether Mr. Finn had that discussion with his client. But – So what relief do you seek from this court? We ask the court to vacate the judgment of forfeiture. Vacate it and do what? Presumably remand it back for forfeiture proceedings at the district court where Mr. – Where is the property to be forfeited now? Where is the property? Your Honor, I don't know where the property is, whether the government still has control of it, or if it's been disposed of. And so that would be a matter that would need to be explored. You don't know whether we have an ongoing dispute and you don't have a property in a race when the case is moot. Well, I don't know that the case is moot, Your Honor. If the government – Nothing to forfeit. You're going to litigate the question of whether you had counsel to conduct proceedings that no longer have any meaning? Well, the record doesn't support that the property has been disposed of. Presumably, as far as the record is concerned, the property is in the care of the federal government. And so we'd ask that the court send the case back to litigate, to actually litigate the forfeiture matter. And what will be litigated? Whether there's a nexus between the criminal conduct and the property to be forfeited. And the property – I don't remember the details of the property, but what were they? There were three homes, three vehicles, over $100,000 in currency, and four gold bars. Those have no connection with this stuff, either. All right, go ahead. I'm sorry. So you have acknowledged that this is plain error review? Yes, Your Honor. Okay. Your brief doesn't brief the four prongs? Your Honor, the brief cites chronic in relation to the third and fourth prong, and this case fits well within chronic. We have a denial of counsel or counsel's – if you don't specifically brief the third and fourth prongs or you don't brief both of those specifically, then that's the end of the matter. For example, on the fourth prong, you don't have any discussion in your brief about how the fourth prong is met. Your Honor, I believe that the reply brief addresses that argument of the government and points to the initial brief. Although the initial brief doesn't have an extensive discussion of it, it addresses it in relation to the burden in chronic, and then it also addresses the significance of the taking in this case, which is not insubstantial. I know, but I'm looking at the blue brief. It's a total of about eight pages. I don't find in there – it's easy to look it over, and I've looked it over more than once. There is no discussion of prongs one, two, three, and four as such, and particularly no mention of prongs three and four. So I don't know why there's anything more for us to discuss here. If the court reads the initial brief as not addressing those four prongs, I just – chronic relates only – the appellant relies on chronic, and it relates only to those prongs and to the burden to show prejudice. And the third prong specifically, as it relates to showing prejudice, the government cites a case, Dominique Benitez, a 2004 case, and actually at their pen site, I believe, does a good explanation of why chronic should apply. Let me ask you this question. The record on appeal at page 68 sets forth that there's a factual basis for the guilty plea that's put forward. The defendant stipulated and agreed that the assets identified in the forfeiture notice should be forwarded to the government as proceeds of the offense of conviction. Raffi and his counsel, Finn, signed the factual resume. Now, to invoke chronic, you have to have a complete want of counsel, correct? That's the concept that is distinguished from ineffective consistent counsel. Yes, sir. What I'm having difficulty with is dealing with the reality that Mr. Finn, a very able lawyer, enjoys a very good reputation, certainly, and he is there, he is present in the court, and they stipulate and agree that the assets identified in the forfeiture notice should be forfeited to the government under 21 U.S.C. 853. And he and the defendant sign it. Now, he's acting as a lawyer. From that, I have trouble seeing how you can get to a complete want of counsel abandonment because at a subsequent date, you go to the forfeiture proceeding. They have already stipulated that these are the object of the forfeiture and that these particular items, the items that a lot of cash and fancy automobiles and so forth, are subject to forfeiture. He may not have had a lawyer at that later point in time that Mr. Finn may not have represented, but how do you maintain that there was a complete want of counsel in the terms of chronic? I don't get that. That's my difficulty, and I want to tell you straight away. I know you're doing your good job, as always, but you've got to help me with that one. The concession given in the factual resume, I believe, is an indication that there was not counsel. What kind of counsel would advise someone to give up three homes, three cars, $100,000, and four gold bars with no consideration? There's not a plea agreement in this case. But also, look at the purpose of the Rule 11 colloquy, which the factual resume is part of, and under Libretti, we know that the Rule 11. Any criminal offense lawyer is not going to make that stipulation and give away the gold bars and all those other objects that may be a fee in the prospect unless they aren't sure that there's nothing there. But the point is, though, he did that. Now, you're not arguing here ineffective assistance. You're saying abandonment by chronic, and that's what I'm getting to. Sure. At the time that the factual resume is executed, the forfeiture proceedings have not begun. Well, sure. They don't begin until the superseding information is filed and then later the motion for preliminary order. But also, I think we look at the purpose. Let's just say that Mr. Fenn never withdrew in any way, and he went on to have the forfeiture proceedings and then shows up. Fenn is going to now stand up and challenge those, despite the stipulation he made with his client at the earlier proceedings? Yes, Your Honor. Mr. Fenn could have sought to withdraw the statement made in the factual resume. And in the context of the factual resume, its purpose is to admonish the defendant of consequences. It's not for providing a factual basis. And so I would ask that the court apply chronic and under that analysis vacate the judgment. That also affects the court is about to impose sentence, and he now has a cooperative defendant with client who is conceding that these proceeds are to be forfeited, et cetera. And that plainly is an engage for the benefit of the defendant in the sentencing process. And you can't just turn around having gotten the sentence and abandon that in the forfeiture proceeding. I guess I'm having a hard time picturing that. But I understand your argument. I appreciate the chronic argument, but I'm having difficulty with it. And if I may, the only thing I'd point out in response to that is that Mr. Rafik filed the pro se pleadings requesting appointment of counsel on the issue of forfeiture before that. Was that after the sentence? No, Your Honor. At what point did he do that? The motion for it was in the record at 127-145. It was after the issuance of the order for preliminary forfeiture in that notice. All right. You've saved time for rebuttal, Mr. Wilford. Thank you. Mr. Magliolo. Thank you, Your Honor. May it please the court, Joe Magliolo for the United States. Do we even need to get to the merits where there's a failure to brief the prongs of plain error review? You've pointed that out pretty effectively in your brief. Your Honor, I think the court does not need to reach the merits in this case. I think having failed to establish, I think, frankly, even any of the four prongs of the plain error review, particularly the third and fourth prongs, as Your Honor has pointed out, the court doesn't need to get any further along the analysis trail for this case. But if it chooses to do so, I think this case turns on just a very relatively simple question. Did Mr. Rafique's attorney totally abandon him on the issue of forfeiture? And as the court has pointed out, the record indicates that he quite clearly did not. In fact, the record shows that Mr. Rafique indicated that he was fully satisfied with this counsel's performance. And it also shows that Mr. Rafique's attorney was with him at the key moments of the forfeiture process. And I think given some of the things my friend Mr. Cofer has said, I'd like to give a very brief explanation of how the forfeiture process works in a case like Mr. Rafique's in order to provide some context to Mr. Rafique's attorney's actions. The forfeiture process, in fact, commences as soon as the forfeiture notice is put in a charging instrument. This process is governed by Federal Rule of Criminal Procedure 32.2, and the government is required to give the defendant notice of any property it seeks to forfeit. And it is not the case, as Mr. Cofer indicated, that the government is able to forfeit any property at once at the motion for preliminary order forfeiture stage. It must, in fact, give the defendant notice of all the property it seeks to forfeit, either in the charging instrument or a bill of particulars. It cannot for the first time put in a motion for preliminary order forfeiture additional property that it seeks to forfeit. It must have given the defendant notice beforehand. And that's precisely what happened here. The next step of the process is after the defendant is found guilty or pleads guilty, the court must determine whether or not the government has established a nexus between the property and the offense. Government bears that burden by preponderance of the evidence standard, and once the court is satisfied that that preponderance standard has been met, it must promptly enter preliminary order forfeiture. That is to say, it has no discretion to do anything other than enter that preliminary order once the nexus has been established. To complete the process, it pronounces forfeiture in sentencing and then includes it in the written judgment. And the court has gone over, I think, the key moments where Mr. Rafique's counsel did provide representation to him at the forfeiture process. The superseding information listed all the property the government eventually sought for forfeiture to be forfeited as proceeds of the offense, the drug trafficking offense. Mr. Rafique executed a factual resume along with his attorney in which they explicitly indicated that the property listed in the superseding information – there's been no surprise – all the property listed in the superseding information was in fact subject to forfeiture as proceeds of the offense. The next critical step happens at the rearrangement hearing where Mr. Rafique indicates that he is fully satisfied with his attorney and he also indicates that he has read the factual resume, he understands it, and that everything contained in that document is true. So at this point in the process, prior to the motion for preliminary order for forfeiture, all of the critical stages of the forfeiture process are complete. All that is going to be left for the district court to do are effectively ministerial duties because we have a notice to the defendant, a guilty plea, and an unassailable nexus established by Mr. Rafique's sworn statement that everything contained in the factual resume is indeed true and correct. And Judge Higginbotham, you raised I think an important point about the pre-sentence report and Mr. Rafique's cooperation. Mr. Rafique started with a really high offense level in his case. He started an offense level of 40, which put his recommended guideline sentence well above the statutory maximum for the one count to which he pled guilty. That is to say he had a lot of work to do to get down from 240 months to 144 months where he eventually got. Mr. Rafique got there by a three-level acceptance responsibility credit and a three-level Section 5K agreement. The acceptance responsibility agreement was fairly tenuous given the fact that he also had an obstruction of justice enhancement, which is to say Mr. Rafique's attorney had every incentive not to challenge his client's sworn statement made before the magistrate judge that the property that he said was subject to forfeiture was indeed subject to forfeiture. It would have put that significant benefit he got on very thin ice. So all that to say, Mr. Rafique's counsel represented him at all the key portions of the forfeiture proceeding, and he did a very good job for him getting him down from 240 months to 144 months. And this court has made the correct point that the standard here is not bad lawyering. It is no lawyering, and he has not made a showing. He certainly couldn't make a Strickland showing, and he absolutely can't make a showing for bad lawyering given that Mr. Rafique's counsel was with him at the critical stages of this process. If the court has no further questions, I'm happy to cede the balance of my time. All right. Thank you, Mr. Magillo. Thank you, Your Honor. Mr. Coffey, you've saved time for rebuttal. The suggestion that the sentence was lower in response to Mr. Rafique's willingness to forfeit is contrary to the record. There was an indication to the trial court that there was no plea bargain agreement, no consideration given in connection with the plea of guilty in this case. And it also highlights the importance of the separation—I'm sorry, the importance of the district court judge making his own determination about the nexus between the crime and the proceeds of the crime, as explained in Libretti. And that is to guard against—or explain, actually, in the dissent of Libretti by Justice Stevens. That is to guard against a situation where you have a wealthy defendant who forfeits more than would be lawfully forfittable in exchange for a better plea bargain or better treatment by the government. And it's the district court's responsibility to review that. And so that's one of the reasons that we have the separation between the Rule 11 colloquy, which the factual resume is a part of, and the determination of the nexus between the proceeds or the property and the crime. And so, Your Honor, the government has argued that Mr. Finn had no incentive to have Mr. Rafique withdraw his stipulation that was in the factual resume. And that argument is exactly the argument that we're making about it being in the factual resume in the first place. There is no apparent incentive for Mr. Rafique to make that concession in the factual resume. There are a lot of warnings and admonishments that make their way into a factual resume, such as immigration. Padilla says that we have to warn our clients about that. Sex offender registration makes its way into the factual resume. We have to warn our clients about that. But that's not an indication that the defense lawyer steps in and represents someone in the removal proceedings or that they're going to litigate the registration. It's not an indication that Mr. Finn had agreed to represent Mr. Rafique in the forfeiture proceedings in light of his later statement, in light of Mr. Rafique's pro se filings before sentencing after the order, and in light of the district court referring that matter to a magistrate. Generally, Judge O'Connor is not going to allow hybrid representation, not going to allow Mr. Rafique to represent himself in the forfeiture, and Mr. Finn to represent him on the other matters. You know, if it weren't money, if we were talking about, for instance, another element of sentencing, and Mr. Finn said, I'm not going to represent Mr. Rafique on the matter of supervised release, if that was in a certificate of conference, we wouldn't have the same clause. But it's an element of sentencing just like the forfeiture is. And so, unless there are additional questions, I hope that I've addressed the court's concerns, and we would ask that you vacate the judgment of the forfeiture. Thank you, Mr. Coffey. Your case is under submission.